UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARTURO SEPULVEDA AYALA,<br><br>Plaintiff,<br><br>v.<br><br>PAMELA BONDI et al.,<br><br>Defendants. | CASE NO. 2:25-cv-01063-JNW<br><br>TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

The Court considers Petitioner Arturo Sepulveda Ayala's motion for a temporary restraining order. Dkt. No. 2.  Sepulveda Ayala faces imminent deportation by U.S. Immigration and Customs Enforcement (ICE) despite having been granted deferred action by U.S. Citizenship and Immigration Services (USCIS) following a bona fide determination on his U visa petition and valid U.S. work authorization. This case presents serious questions going to the merits of Sepulveda Ayala's claims, as they relate to this inter-agency conflict within the Department of Homeland Security and regulatory ambiguity about the meaning of deferred action.

TEMPORARY RESTRAINING ORDER - 1

These serious questions combined with the clear irreparable harm of deportation and family separation, justify immediate intervention to preserve the status quo until both parties can fully present their arguments at a preliminary injunction hearing.

## 2. BACKGROUND

Sepulveda Ayala applied for a U visa with U.S. Citizenship and Immigration Services (USCIS) in 2022. Dkt. No. 2-1 at 12. U.S. Immigration and Customs Enforcement (ICE) stayed his removal from the United States while his U visa application was pending until January 23, 2025. *Id.* at 2. On January 8, 2025, Plaintiff filed a second stay application with ICE because he still had not received a decision on his U visa application. *Id.* ICE did not adjudicate his second stay application before the first stay expired and arrested Sepulveda Ayala on February 2, 2025. *Id.*

On February 19, 2025, USCIS issued a "Bona Fide Determination Notice" ("BFD") on Sepulveda Ayala's U visa application, granted him "deferred action," and authorized his employment in the United States by giving him an Employment Authorization Document ("EAD"). *Id.* at 12–13.

On March 5, 2025, in a related case, Sepulveda Ayala filed a complaint for mandamus relief to compel the adjudication of whether he should be placed on the U visa waitlist, adjudication of the U visa itself, and adjudication of his application for advance permission to enter as a nonimmigrant. *Sepulveda Ayala v. Noem et al.*, Case No. 3:25-cv-5185-JNW, Dkt. No. 1. He requested the same relief under the Administrative Procedure Act (APA). *Id.*

One day later, on March 6, 2025, ICE denied Sepulveda Ayala's second stay application as "unnecessary and in fact, redundant," because USCIS had already granted Sepulveda Ayala deferred action. *Id*. at 2-1, 14–15. Even so, ICE continued to detain Sepulveda Ayala at the Northwest ICE Processing Center in Tacoma, Washington.

On April 25, 2025, ICE informed Sepulveda Ayala's attorney that it intended to remove Sepulveda Ayala within a few days. *Id*. at 2. Sepulveda Ayala filed a motion for a temporary restraining order (TRO), which the Court granted the next day to maintain the status quo during the pendency of Sepulveda Ayala's subsequently filed motion for preliminary injunction. *Sepulveda Ayala v. Noem et al.*, Case No. 3:25-cv-5185-JNW, Dkt. No. 9.

That same day, "ICE *sua sponte* conducted a 'secondary review' [of its stay denial] and determined that the initial denial was not accurate." Dkt. No. 1 at 5. On its sua sponte review, ICE reached a different conclusion about whether "deferred action" provides the same relief as a stay of removal. It stated:

> The ICE Office of Enforcement and Removal Operations in Seattle received your ICE Form I-246, *Application for Stay of* Deportation or Removal. On March 6, 2025, ERO Seattle denied this ICE form I-246 on the basis that you were not subject to imminent removal from the United States.[1] Upon further legal review, this has been determined not to be accurate and a second review and consideration of your ICE Form I-246 was completed.

Dkt. No. 2-1 at 16.

---

[1] While this secondary review order states that ICE's Seattle field office denied Sepulveda Ayala's first application for a stay as moot due to his recently received deferred action, the record shows that the same field officer in Portland, Oregon issued both orders. Dkt. No. 2-1 at 14–17.

TEMPORARY RESTRAINING ORDER - 3

On June 5, 2025, this Court denied Sepulveda Ayala's preliminary injunction motion. *Sepulveda Ayala v. Noem et al.*, Case No. 3:25-cv-5185-JNW, Dkt. No. 23. In short, the Court determined that Sepulveda Ayala had not shown that he was likely to succeed on the merits of his mandamus and APA claims alleging USCIS unreasonably delayed in processing his U-visa petition. *Id*. at 10.

On June 6, 2025, Sepulveda Ayala petitioned for a writ of habeas corpus, asserting that his continued detention violates federal law because he has been granted deferred action. He also filed this emergency motion for a TRO. Dkt. Nos. 1; 2. Unlike his mandamus case, which challenged processing delays, this action directly the lawfulness of his current detention and the Government's authority to remove him while he has deferred action status. The Government opposes his motion for a TRO, arguing among other things that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. Dkt. No. 9.

ICE has held Sepulveda Ayala in continuous detention since his February 2, 2025, arrest. Sepulveda Ayala, who is 53 years old, has lived in the United States for more than 20 years since his last entry in 2004. Dkt. No. 1 at 6, 15.

### 3.  DISCUSSION

**3.1  Legal standard.**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

After considering the record and the applicable legal standard, the Court concludes that a TRO is warranted for the reasons stated below.

**3.2  The Court has subject-matter jurisdiction.**

The Government argues that 8 U.S.C. § 1252(g) strips the Court of subject-matter jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Subject to its ongoing duty to assure itself of its own jurisdiction, *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000), the Court finds at this stage that it has subject-matter jurisdiction.

The Supreme Court has interpreted Section 1252(g) narrowly, limiting it to "only three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)) (emphasis in original) ("*AADC*")). As the Supreme Court found, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* (Scalia, J.); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*") (holding court had jurisdiction to review agency decision to rescind DACA, consistent with Section 1252(g), because it was not a decision to "commence proceedings," or to "'adjudicate' a case or 'execute' a removal order" and was rather a decision to "revoke[] a deferred action program with associated benefits." (quoting 8 U.S.C. § 1252(g))); *Jatta v. Clark*, Case No. 19-cv-2086, 2020 WL 7700226, at *7 (W.D. Wash. July 17, 2020) (Report and Recommendation) (Section 2255(g) "d[oes] not strip the district court[s] of jurisdiction to enter injunctive relief," when "the 'gravamen' of the defendant's claim d[oes] not arise from the decision or action to

TEMPORARY RESTRAINING ORDER - 6

commence [removal] proceedings." (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc))). Accordingly, Section 1252(g) does not cover removal-related decisions such as refusals to reconsider final removal orders, decisions to open investigations, surveillance decisions, and decisions to reschedule deportation hearings. *AADC*, 525 U.S. at 482.

This case presents a challenge to the revocation of immigration benefits rather than removal "execution" itself. In *Department of Homeland Security v. Regents of the Univ. of California*, the Supreme Court found jurisdiction to review an agency's rescission of deferred action benefits, noting that such benefits are the "types of benefits that courts often are called upon to protect." 591 U.S. at 19 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)); *Barrios Garcia v. DHS*, 25 F.4th 430, 449 (6th Cir. 2022) (holding in BFD EAD context that "access to [work-authorization] benefits is an interest [that] courts are often called upon to protect." (citation modified)). The Court distinguished between challenges to removal decisions and challenges to benefit revocations, finding jurisdiction over the latter. *Id.* at 19–20.

Here, USCIS granted Sepulveda Ayala deferred action and employment authorization following its bone fide determination process. ICE's continued detention and planned removal would effectively revoke those benefits without explanation or process. Thus, this case presents the same type of benefits revocation that *Regents* found reviewable, which is not a direct challenge to removal execution, as the Government contends. *See* 591 U.S. at 19; *Barrios Garcia*, 25 F.4th at 449.

TEMPORARY RESTRAINING ORDER - 7

The Government's regulatory interpretations do not support its jurisdictional argument. First, 8 C.F.R. § 214.14(c)(1)(ii) only that *filing* a U visa petition has no effect on removal authority; it says nothing about the effect of *being granted* deferred action. Second, the Government mischaracterizes the purpose and scope of 8 C.F.R. § 274a.12(c)(14), which governs employment authorization eligibility and includes only descriptive language about deferred action giving cases "lower priority for removal"—it does not define deferred action's legal effects on *removal proceedings*.

The Government's reliance on *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), is also misplaced. *Rauda* involved a direct challenge to ICE's timing in executing a removal order where the petitioner sought to delay removal pending a motion to reopen proceedings. *Id.* at 776-78. Sepulvea Ayala does not challenge removal timing but rather seeks to prevent revocation of benefits that USCIS affirmatively granted him. This distinction aligns with the Supreme Court's analysis in *Regents*, which found jurisdiction over benefit revocations while recognizing that direct removal challenges remain barred. 591 U.S. at 19.

Thus, the Court finds that it has subject-matter jurisdiction, but as all district courts must do, it will continue to assess its jurisdiction as the litigation proceeds.

**3.3   Sepulveda Ayala raises serious questions going to the merits.**

Sepulveda Ayala argues that the U.S. Government is currently detaining him without legal authority, and he seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2241. His argument is straightforward. The Government—through ICE— reinstated a 2004 removal order against him and detained him in February 2025. Then, after detaining him, the Government—through USCIS—granted him a BFD, EAD, and "deferred action." Because he has deferred action, he maintains the Government has no basis to detain him for the purpose of deporting him.

### 3.3.1  Petitioner raises serious questions going to the merits of his habeas claim.

Sepulveda Ayala asserts that his benefits, including deferred action, deprive ICE of the authority to keep him in custody and to deport him. In response, the Government relies on 8 C.F.R. § 214.14(c)(1)(ii) and 8 C.F.R. § 274a.12(c)(14). As discussed above, the Government's regulatory interpretations are problematic. The regulatory scheme creates ambiguity about what USCIS meant when it granted Plaintiff deferred action following its bona fide determination process.

This ambiguity is highlighted by the Government's comparison to T visa regulations. The Government notes that T visa regulations explicitly provide that a bona fide determination "stays removal." Dkt. No. 9 at 14 (citing 8 C.F.R. § 214.204(b)(2)(iii)). The Government argues this shows Congress deliberately omitted similar language from U visa regulations. But this comparison underscores rather than resolves the regulatory ambiguity, as any gaps in the regulatory scheme will require judicial interpretation.

Precedent supports interpreting deferred action as providing substantive relief from removal. The Supreme Court has called deferred action an "'exercise in administrative discretion' under which 'no action will thereafter be taken to

proceed' with the applicant's removal.'" *De Sousa v. U.S.C.I.S.*, 720 F. Supp. 3d 794, 799 (N.D. Cal. 2024) (quoting *AADC*, 525 U.S. at 484 (1999). And the Ninth Circuit has held:

> The basic concept is a simple one: deferred action is a decision by Executive Branch officials not to pursue deportation proceedings against an individual or class of individuals otherwise eligible for removal from this country. *See* 6 Charles Gordon et al., Immigration Law & Procedure § 72.03[2][h] (2018) ("To ameliorate a harsh and unjust outcome, the immigration agency may decline to institute proceedings, may terminate proceedings, or may decline to execute a final order of deportation. This commendable exercise in administrative discretion . . . is now designated as deferred action.")[.]

*Regents of Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476, 487 (9th Cir. 2018) *reversed in part and vacated in part on other grounds by Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020).

The timeline here creates particularly serious questions. The Government reinstated Sepulveda Ayala's 2004 removal order on February 2, 2025, then granted him deferred action on February 19, 2025. If deferred action has no effect on removal proceedings, it is unclear why USCIS would grant such relief to someone already subject to reinstated removal proceedings. This sequence suggests USCIS believed it was providing meaningful protection, and for a time, ICE agreed, only to inexplicably reverse course.

These regulatory ambiguities and conflicting agency interpretations raise serious questions about the scope and meaning of Sepulveda Ayala's deferred action status, and thus the merits of his habeas claim.

### 3.4 The remaining *Winter* factors support a TRO.

The second *Winter* factor—irreparable harm—tips sharply in favor of a TRO, as Sepulveda Ayala is in his 50s and has lived in the United States for most of his life. He faces deportation, family separation, and additional hurdles in the U-visa process if removed. *See Sepulveda Ayala v. Noem et al.*, Case No. 3:25-cv-5185-JNW, Dkt. No. 6 at 5–6 (citing 8 U.S.C. §1182(a)(9)(A)) (explaining that removal will trigger "inadmissibility," and will require Sepulveda Ayala to obtain a discretionary waiver of inadmissibility). The Court finds these harms are severe, concrete, and cannot be remedied through monetary compensation.

The Court further finds these harms are imminent. The Government has asserted that absent the Court's TRO in Sepulveda Ayala's separate mandamus case, it would have already removed him. *Sepulveda Ayala v. Noem et al.*, Case No. 3:25-cv-5185-JNW, Dkt. No. 16 at 2 ("DHS has decided to execute the removal order and would have already done so but for this Court's Temporary Restraining Order ('TRO') enjoining his removal."). That TRO has expired, and the Government does not contest the immediacy of Sepulveda Ayala's removal in its response to the pending TRO motion. Accordingly, the Court finds that threat of imminent removal exists.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in Sepulveda Ayala's favor. A TRO would impose little to no prejudice on the Government, which has already issued a Bona Fide Determination

TEMPORARY RESTRAINING ORDER - 11

on Sepulveda Ayala's U-visa petition, granted him deferred action, and authorized him to work lawfully in the United States. Indeed, ICE acknowledged as recently as March 6, 2025, that removal would be inappropriate given his deferred action status. The public interest also favors ensuring that the Government does not detain or deport individuals without a legal basis. Ultimately, a TRO precluding Sepulveda Ayala's deportation would change little to nothing for the agencies involved. Meanwhile, absent a TRO, Sepulveda Ayala will face life-changing and irreparable harm.

### 4.   CONCLUSION

Accordingly, the Court ORDERS that Defendants and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are immediately enjoined from:

(a) Removing or deporting Sepulveda Ayala from the United States; and

(b) Transferring Sepulveda Ayala from the Northwest ICE Processing Center to any other facility during the pendency of these proceedings.

No security bond is required under Federal Rule of Civil Procedure 65(c) because Defendants face no realistic likelihood of harm from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Having granted the TRO, the Court will set a preliminary injunction hearing, but it would like the Parties' input before doing so. Accordingly, the Court FURTHER ORDERS the Parties to meet and confer and file a joint status report by June 10, 2025, (1) proposing a preliminary injunction briefing schedule, (2)

indicating whether they believe a hearing is necessary, and if so, (3) indicating whether they plan to present evidence at the hearing.

Dated this 9th day of June, 2025.

Jamal N. Whitehead
United States District Judge