UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTURO SEPULVEDA AYALA,<br><br>               Petitioner,<br><br>   v.<br><br>PAMELA BONDI, et al.,<br><br>               Respondents. | CASE NO. 2:25-cv-01063-JNW-TLF<br><br>ORDER GRANTING WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

Petitioner Arturo Sepulveda Ayala's petition for writ of habeas corpus comes before the court for final resolution. Dkt. No. 1. The Court has previously granted Sepulveda Ayala's motion for a temporary restraining order and preliminary injunction, finding that he was likely to succeed on the merits of his claims and that his continued detention while possessing deferred action likely violates federal law. Dkt. Nos. 11; 18.

The facts of this case are straightforward. United States Immigration and Customs Enforcement (ICE) arrested Sepulveda Ayala in February 2025 based on a twenty-one-year-old removal order. Three weeks later, United States Citizenship

ORDER GRANTING WRIT OF HABEAS CORPUS - 1

and Immigration Services (USCIS) granted him deferred action and work authorization through its U visa bona fide determination process. ICE has nonetheless continued his detention.

Sepulveda Ayala contends that his deferred action bars his removal and makes continued detention unlawful. The Government disputes both the Court's jurisdiction and the merits, arguing that deferred action creates only "lower priority" status and does not preclude removal. Having thoroughly considered the Government's arguments opposing Sepulveda Ayala's habeas petition, the Court is not persuaded that its previous analysis was in error. For the reasons set forth in the Court's prior orders and the additional analysis below, the Court concludes that Sepulveda Ayala's detention violates federal law.

## 2. BACKGROUND

The Court incorporates by reference the factual background set forth in its prior orders. Dkt. Nos. 11; 18. In summary, Sepulveda Ayala is a 53-year-old Mexican citizen who has lived in the United States for over 20 years. In 2004, the Government issued a removal order against him, and he was removed from the United States. He reentered without inspection later that year and has remained in the United States since. Dkt. No. 1 at 4. His wife, children, and grandchildren all live here.

In November 2022, Sepulveda Ayala applied for a U visa with USCIS. Dkt. No. 2-1 at 12. Based on his pending U visa application, ICE stayed his removal from the United States until January 23, 2025. *Id.* at 2. In early January 2025,

anticipating that the stay would likely expire before USCIS decided his U visa application, Sepulveda Ayala requested a renewal of the stay. Dkt. No. 1 at 4 (citing Dkt. No. 1-2 at 2, 10). ICE did not adjudicate his request before the existing stay expired.

On February 2, 2025, with no stay in place, ICE reinstated Sepulveda Ayala's 2004 removal order and arrested him. ICE has detained him at the Northwest ICE Processing Center in Tacoma, Washington, ever since. *Id.*; Dkt. No. 1-2 at 2, 4–11.

On February 19, USCIS issued a Bona Fide Determination Notice ("BFD") on Sepulveda Ayala's U visa application, granting him "deferred action" and an Employment Authorization Document ("EAD"), authorizing him to work in the United States from February 18, 2025, to February 17, 2029. *Id*. at 12–13. The BFD notice states that deferred action is "an act of administrative convenience to the government which gives some cases lower priority for removal." *Id*. at 12. Despite receiving deferred action and work authorization, ICE did not release Sepulveda Ayala and continued to pursue his removal.

On March 6, ICE denied Sepulveda Ayala's pending stay application, explaining, "USCIS has granted your client Deferred Action; it is unnecessary and in fact, redundant, for [Enforcement and Removal Operations] to grant a stay of removal. Accordingly, the ICE [stay of removal request] . . . is herewith denied." Dkt. No. 2-1 at 14–15. This denial acknowledged that deferred action effectively rendered a stay of removal unnecessary. Despite this acknowledgment, however, ICE continued to detain Sepulveda Ayala for removal.

On April 25, ICE conducted a "secondary review" of its March 6 denial and changed its reasoning for denying Sepulveda Ayala's stay. It stated that after a "legal review," it decided that deferred action does not provide relief from removal, and it found that Sepulveda Ayala was now subject to immediate removal from the United States. Dkt. No. 2-1 at 16. That same day, ICE informed Sepulveda Ayala's attorney that it intended to remove him. *Id*. at 2.

On June 6, 2025, Sepulveda Ayala filed this habeas petition, challenging his detention. The Court issued a temporary restraining order, and later a preliminary injunction, to maintain the status quo while the Court considered Sepulveda Ayala's habeas petition. Dkt. Nos. 11; 18.

Briefing on the habeas petition was completed on July 30, 2025. The next day, July 31, the Government filed a declaration from USCIS Section Chief Alicja Kaczynski. Dkt. No. 22. The declaration reveals that on July 31—the same day as the filing—USCIS issued a notice of intent to revoke Sepulveda Ayala's employment authorization and terminate his deferred action. *Id*. at 2–3. The Kaczynski declaration states that USCIS "exercised discretion" to grant deferred action to Sepulveda Ayala on February 18, 2025. *Id*. The notice of intent gives Sepulveda Ayala until August 18 to respond, after which USCIS will "review the response and make a determination as to whether the employment authorization will be revoked and whether the deferred action will be terminated." *Id*. Sepulveda Ayala's deferred action remains in effect during this process.

## 3. DISCUSSION

**3.1    The Court has subject-matter jurisdiction.**

The Government challenges this Court's subject-matter jurisdiction, rehashing arguments the Court previously rejected in its preliminary injunction order. The Government states that it disagrees with the Court's analysis but offers no new legal authority or reasoning that would warrant reconsideration. Dkt. No. 19 at 5; *see Sepulveda Ayala v. Bondi, et al.*, 2025 WL 2084400, at *2–4 (W.D. Wash. July 24, 2025). Still, as courts have a continuing obligation to examine the basis for their jurisdiction, *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000), the Court has reviewed the Government's renewed arguments with fresh eyes, and yet, reaches the same conclusions for the reasons previously stated and incorporated herein.

The Court reaffirms that Sepulveda Ayala's claims arise from the Government's grant of deferred action combined with ICE's subsequent refusal to honor that grant, not from any discretionary decision to execute his removal order. Section 1252(g) does not strip this Court of jurisdiction.

The Government's remaining jurisdictional arguments rehash previously rejected contentions. The Government again cites *Velasco Gomez v. Scott*, which this Court has already distinguished for reasons that remain valid. *See Sepulveda Ayala*, 2025 WL 2084400, at *6. The Government also continues to argue this Court should not rely on DACA cases, despite acknowledging that deferred action under DACA affects executability of removal orders. These arguments lack merit for the reasons previously explained, which the Court again incorporates here.

ORDER GRANTING WRIT OF HABEAS CORPUS - 5

**3.2     The Government's detention of Sepulveda Ayala is unlawful.**

    **3.2.1     Legal standard.**

District courts grant writs of habeas corpus to those who demonstrate their custody violates the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting, *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). Courts have statutory and inherent power to grant such petitions. *Ozturk v. Trump*, Case No. 2:25-cv-374, 2025 WL 1145250, at *15 (D. Vt. Apr. 18, 2025) (citing *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

    **3.2.2     Deferred action is an immigration benefit that prevents removal.**

Whether Sepulveda Ayala's detention is lawful turns on a pure question of law: the meaning of "deferred action." The Government detains Sepulveda Ayala under 8 U.S.C. § 1231(a) because it intends to deport him. But he argues his detention violates federal law because the Government has deferred his deportation

by granting him deferred action, eliminating any legal basis for his continued confinement.

The Court incorporates by reference its comprehensive analysis of this issue in its preliminary injunction order. *Sepulveda Ayala*, 2025 WL 2084400, at *7–8. In summary, the Supreme Court defined deferred action in *AADC* as meaning "no action will thereafter be taken to proceed against an apparently deportable alien." 525 U.S. at 484. True, this definition arose in the context of selective enforcement rather than the U visa BFD process, but the Court finds this definition persuasive and applicable here. This definition reflects the fundamental nature of deferred action, regardless of the specific program or context in which it is granted. The Ninth Circuit and numerous district courts have consistently applied this understanding across different deferred action contexts, holding that deferred action prevents recipients' removal from the United States. *See Sepulveda Ayala*, 2025 WL 2084400, at *7–8 (collecting cases).

The Government makes several arguments in its opposition that the Court addressed and rejected in its preliminary injunction order. The Court finds these arguments remain unpersuasive for the reasons previously explained and the additional analysis below.

The Government continues to argue this Court should defer to language in Sepulveda Ayala's BFD notice describing deferred action as "lower priority for removal" and to "BFD Chapter, § 7" of the USCIS Policy Manual. Dkt. No. 19 at 8, 10. As this Court explained in its preliminary injunction order, individual notices to beneficiaries cannot override Supreme Court precedent, and the "lower priority"

language naturally flows from the Government's decision not to proceed with removal—the core meaning of deferred action. *Sepulveda Ayala*, 2025 WL 2084400, at *8.

As this Court noted in its preliminary injunction order, the Government's reliance on the BFD notice language is particularly problematic given ICE's own contemporaneous interpretation. ICE initially acknowledged that deferred action rendered stays "unnecessary and in fact, redundant," but reversed this position only after litigation began through a "secondary review." This contradiction undermines the Government's current stance and appears to be a post-hoc rationalization rather than reasoned agency interpretation. *Id.* at *7 (*citing Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)).

As for the Government's citation to "BFD Chapter, § 7," it refers to language from a section explaining why petitioners outside the United States cannot receive deferred action. That language is a descriptive subordinate clause, not a definition. *Id.* at *8 n.1. The Court reaffirms its finding that this language does not conflict with established precedent defining deferred action.

Next, the Government reraises its argument that 8 U.S.C. § 1227(d) supports its definition of deferred action. This Court addressed and rejected this argument in its preliminary injunction order, finding that Section 1227(d) provides deferred action as an alternative when administrative stays are denied. If the Government could ignore grants of deferred action and proceed with removal anyway, this statutory alternative would be illusory. *Sepulveda Ayala*, 2025 WL 2084400, at *8.

Finally, the Government cites *Raghav v. Jaddou*, No. 2:25-cv-00408, 2025 WL 373638 (E.D. Cal. Feb. 3, 2025), for the proposition that "Plaintiff obtaining a BFD in his favor would not prevent his removal." Dkt. No. 19 at 8. This reliance is misplaced. *Raghav* involved a plaintiff who did not have BFD or deferred action, making it factually inapposite. The cited language is dicta addressing a hypothetical situation not before that court. Because *Raghav* is distinguishable and non-binding, and because it only addresses BFD in dicta, the Court does not find it persuasive.

### 3.2.3 Because deferred action prevents removal, Sepulveda Ayala has shown that his detention is unlawful.

The Government's sole basis for detaining Sepulveda Ayala is that it may do so in order to remove him. *See* Dkt. No. 19 at 7 ("ICE may detain Ayala pending the execution of his removal order."); *cf. Phan v. Reno*, 56 F. Supp. 2d 1149, 1156 (1999) ("Detention by the INS can be lawful only in aid of deportation."). For the reasons above, the Court finds that Sepulveda Ayala's deferred action status prevents removal. As a result, the Court concludes that the Government has no legal basis to detain Sepulveda Ayala and that Sepulveda Ayala has met his burden on his habeas petition.

### 3.3 The July 31 USCIS declaration does not affect the Court's analysis.

The day after this matter became ripe for consideration, the Government filed a declaration indicating USCIS issued a notice of intent to revoke Sepulveda Ayala's deferred action. This last-minute development does not alter the Court's analysis.

ORDER GRANTING WRIT OF HABEAS CORPUS - 9

First, the notice of intent to revoke confirms that Sepulveda Ayala currently possesses valid deferred action status.

Second, the timing of this notice reinforces concerns about the Government's shifting litigation positions. The Court has already noted the problematic timing of ICE's "secondary review" conducted after litigation began.

Third, Sepulveda Ayala has until August 18 to respond to the revocation notice, and USCIS must review any response before making a final determination. His deferred action remains in effect during this process.

While the Government likely initiated revocation proceedings in response to this Court's preliminary rulings rather than its own belief that deferred action was improvidently granted, the substantive point remains: the Government's decision to pursue formal revocation procedures implicitly acknowledges that deferred action has substantive legal effect requiring proper administrative process to terminate. One cannot revoke what was never meaningful to begin with.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. Sepulveda Ayala's Petition for Writ of Habeas Corpus is GRANTED. Dkt. No. 1.

2. The Government's motion to dismiss for lack of jurisdiction, Dkt. No. 19, is DENIED.

3. Sepulveda Ayala shall be RELEASED from custody immediately.

4. Within TWENTY-FOUR (24) hours of this order, Respondents shall provide the Court with a declaration confirming that Sepulveda Ayala has been released from custody and informing the Court of the date and time of his release.

IT IS SO ORDERED.

Dated this 4th day of August, 2025 at 8:12 a.m. (PT).

Jamal N. Whitehead
United States District Judge

ORDER GRANTING WRIT OF HABEAS CORPUS - 11