UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARTURO SEPULVEDA AYALA,

Petitioner,

v.

PAMELA BONDI, et al.,

Respondents.

CASE NO. 2:25-cv-01063-JNW-TLF

ORDER GRANTING MOTION FOR ATTORNEYS' FEES IN PART

Petitioner Arturo Sepulveda Ayala's motion for attorneys' fees comes before the Court. Dkt. No. 25. He seeks fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for the work of his attorneys Kelly Vomacka and Adam Boyd. The Court GRANTS the motion in part for the reasons stated below.

## 1. LEGAL STANDARD

Under EAJA, when a qualifying civil action is brought by or against the United States, "a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28 U.S.C.

§ 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

The Government must show that its position was "substantially justified." *Medina Tovar*, 41 F.4th at 1089. The Ninth Circuit applies a "reasonableness standard in determining whether the government's position was substantially justified." *Id.* "'Substantially justified' means 'justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2023)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id.* (quoting *Meier*, 727 F.3d at 870). When deciding whether the Government's position was reasonable, courts consider not only its position in litigation, but also the reasonableness "of the underlying agency action giving rise to the civil action." *Id.* This approach is required by EAJA's plain language, confirming the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

Under EAJA, attorney fees are limited to $125 per hour unless the court finds that a higher fee is justified. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has found higher rates justified based on cost of living, and has approved a table of annually adjusted EAJA rates based on costs of living. *See Nadarajah v. Holder*,

569 F.3d 906, 918 (9th Cir. 2009) The parties agree that the maximum rate for the work performed in this case is approximately $250 per hour.

The Ninth Circuit uses a three-part test to decide whether enhanced attorney's fees are appropriate in a given case: "(1) the attorney must possess distinctive knowledge and skills developed through a practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate." *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158 (9th Cir. 2008) (citation modified).

When ruling on a motion for attorney's fees, the Court "must find the facts specially and state its conclusions of law separately." *Su v. Hernandez*, No. 2:26-cv-00765-TMC, 2026 WL 2581957, at *2 (W.D. Wash. Sept. 1, 2026) (quoting Fed. R. Civ. P. 52(a)(1)) (citing Fed. R. Civ. P. 54(d)(2)(C)).

## 2. FINDINGS OF FACT

2.1. Sepulveda Ayala has lived in the United States for more than 20 years. He has a 2004 removal order.

2.2. In November 2022, Sepulveda Ayala applied for a U visa with USCIS. Dkt. No. 2-1 at 12. Based on his pending U visa application, ICE stayed his removal from the United States until January 23, 2025. *Id.* at 2.

2.3. In early January 2025, anticipating that the stay would likely expire before USCIS decided his U visa application, Sepulveda Ayala requested a renewal of the stay. Dkt. No. 1 at 4 (citing Dkt. No. 1-2 at 2, 10). ICE did not adjudicate his request before the existing stay expired.

2.4. On February 2, 2025, with no stay in place, ICE reinstated Sepulveda Ayala's 2004 removal order, arrested him, and detained him at the Northwest ICE Processing Center in Tacoma, Washington. *Id.*; Dkt. No. 1-2 at 2, 4–11.

2.5. On February 19, USCIS issued a Bona Fide Determination Notice ("BFD") on Sepulveda Ayala's U visa application, granting him deferred action and an Employment Authorization Document ("EAD"), authorizing him to work in the United States from February 18, 2025, to February 17, 2029. Dkt. No. 1-2 at 12–13. Despite receiving deferred action and work authorization, ICE did not release Sepulveda Ayala and continued to pursue his removal.

2.6. On March 6, ICE denied Sepulveda Ayala's pending stay application, explaining, "USCIS has granted your client Deferred Action; it is unnecessary and in fact, redundant . . . to grant a stay of removal. Accordingly, the ICE [stay of removal request] . . . is herewith denied." Dkt. No. 2-1 at 14–15. Despite this acknowledgment that deferred action effectively stayed his removal, ICE continued to detain Sepulveda Ayala, purportedly for removal.

2.7. On April 25, ICE conducted a "secondary review" of its March 6 denial and changed its reasoning for denying Sepulveda Ayala's stay. It stated that after a "legal review," it decided that deferred action does not provide relief from removal, and it found that Sepulveda Ayala was now subject to immediate removal from the United States. Dkt. No. 2-1 at 16. That same day, ICE informed Sepulveda Ayala's attorney that it intended to remove him. *Id.* at 2.

2.8. On June 6, 2025, Sepulveda Ayala filed a habeas petition with this Court, challenging his detention. Dkt. No. 1.

2.9. Briefing on the habeas petition closed on July 30, 2025. The next day, USCIS issued a notice of intent to revoke Sepulveda Ayala's employment authorization and terminate his deferred action. Dkt. No. 23 at 4. His deferred action remained in effect while that process ran. *Id.*

2.10. The Court granted Sepulveda Ayala's habeas petition and ordered his release on August 4, 2025. Dkt. No. 23.

2.11. Kelly Vomacka and Adam Boyd represented Sepulveda Ayala in this habeas proceeding and petition for EAJA fees. They collectively spent 59 hours working on this matter, and they paid $28 in parking costs to attend oral argument. Dkt. No. 25-1 (Time Log).

2.12. Kelly Vomacka is a Washington immigration attorney with thirteen years of experience in immigration law. Dkt. No. 25-4 at 1–2. She ran her own practice, focusing on immigration issues, for over ten years. *Id.* Vomacka has also represented clients seeking post-conviction relief in Washington State through personal restraint petitions, and thus has knowledge and skills relevant to federal habeas cases. *Id.* at 1–4. She has presented on habeas and post-conviction relief, as well as numerous immigration topics. *Id.* at 3–4. Her volunteer and pro bono work in the immigration sphere is extensive. *Id.* at 2–3.

2.13. Adam Boyd has over ten years of experience in immigration law and is now the managing attorney at Gibbs Houston Pauw. Dkt. No. 25-3 at 1. His responsibilities include "overseeing firm-wide immigration litigation strategy,

including habeas corpus actions, mandamus suits, and petitions for review in the federal courts of appeals." *Id.*

2.14. Vomacka states that neither she nor Boyd would have taken the case for the statutory EAJA fee. Dkt. No. 25-2 ¶ 6. She also says that she "is not aware that any other lawyer would have taken it on for the statutory fee." *Id.*

2.15. In the EAJA fee petition, Vomacka stated that she anticipated supplementing the petition with additional supporting declarations from other immigration law practitioners, but she never did. Dkt. No. 25 at 9.

2.16. The fee petition states that immigration practitioners supported similar factual assertions in a recent motion for EAJA fees in *Rahman v. Bondi*, No. 2:24-cv-2132-JHC-TLF, 2026 WL 323046 (Feb. 6, 2026) (Dkt. No. 38-5; 38-6; and 38-7), a case in which Vomacka and Boyd represented the prevailing immigration habeas petitioner. Dkt. No. 25 at 9 n.3.

2.17. The supporting declarations in *Rahman* included the declaration of Matt Adams, the Legal Director of the Northwest Immigrant Rights Project ("NWIRP"). Dkt. No. 38-5 in *Rahman*, No. 2:24-cv-2132-JHC-TLF. The Court considers Adams's declaration insofar as it relates to the skill and availability of immigration lawyers in Washington State. Adams understands "the level of skill required to practice immigration law competently, and the heightened level of skill required to litigate immigration issues in federal courts." *Id.* ¶ 5. He is also "familiar with the range of fees charged by immigration attorneys in Washington State." *Id.* He explains "[t]here are very few immigration lawyers that have the experience necessary to handle immigration cases in

federal court, as they do not have the combination of immigration experience and federal litigation experience to present [such cases].” *Id.* ¶ 6. He adds that “even [lawyers] who regularly handle routine immigration matters, including complex matters before the agency, are unable or unwilling to represent clients before the federal courts in their immigration cases.” *Id.* Based on his 27 years of experience with NWIRP, Adams believes there is “a shortage of lawyers in Washington State with the knowledge and skill required to competently handle federal immigration litigation.” *Id.* ¶ 7.

2.18. The Court also considers the declaration of Melissa Campos-Castaneda, submitted in support of Vomacka’s and Boyd’s EAJA fee petition in *Rahman*. Dkt. No. 38-6 in No. 2:24-cv-2132-JHC-TLF. At the time of her declaration, Campos-Castaneda had practiced immigration law for over 18 years and was the American Immigration Lawyers Association (“AILA”) Pro Bono Chair for Washington State. *Id.* ¶ 1. She explains that most immigration attorneys in the state limit their practice to representing clients before USCIS, and that only a few handle removal defense before the Executive Office of Immigration Review. *Id.* ¶ 3. Even fewer “are willing and able to handle cases before the federal courts.” *Id.* And even fewer have the skill and ability to handle federal immigration cases involving habeas corpus. *Id.* ¶ 4. Campos-Castaneda explains that “[h]abeas litigation requires distinctive knowledge and specialized skill that are not generally available in the immigration bar.” *Id.* ¶ 7. In her experience, “[m]ost attorneys charge more than [the EAJA rate of $250 per hour] even for non-specialized immigration work.” *Id.* ¶ 8.

2.19. The Court also considers the declaration of Julia C. Hunter, submitted in *Rahman*. Dkt. No. 38-7 in No. 2:24-cv-2132-JHC-TLF. Hunter is a local immigration attorney and has been an AILA member for ten years. *Id.* ¶ 1. Based on her experience, she believes the minimum hourly rate a qualified attorney would charge for representation in a case like Rahman's is $650 per hour. *Id.* ¶ 7.

2.20. Vomacka and Boyd were awarded $650 per hour under EAJA in *Rahman*.

2.21. The Court ordered the parties to submit briefing on whether the motion for fees should be stayed pending the Supreme Court's decision in *Montoya Palacios v. Baker*, No. 25-4045, 2026 WL 171690 (D. Md. Jan. 22, 2026), *aff'd*, No. 26-6251, 2026 WL 1154321 (4th Cir. Mar. 24, 2026), *cert. granted* sub nom. *Montoya Palacios v. Liggins*, No. 25-1223, ___ S. Ct. ___, 2026 WL 1855057 (June 29, 2026). Dkt. No. 30. Having accepted review of that case, the Supreme Court will likely decide whether attorneys' fees are available under EAJA for immigration habeas petitions. The Government argued that this case should be stayed pending the Supreme Court's decision, while Sepulveda Ayala urged the Court to decide the motion. Dkt Nos. 31; 32.

## 3. CONCLUSIONS OF LAW

3.1. The Court first decides whether a stay is appropriate. "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)

(citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). When a party requests a stay, the court must weigh certain competing interests. *Id.* "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* The party requesting a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Landis*, 299 U.S. at 255).

3.2. Here, a stay will "work damage" to Sepulveda Ayala. Interest on an EAJA award runs only from the date of the award. 28 U.S.C. § 1961(a). If the Court rules now, and if the Government appeals and loses, interest accrues from that date through the day before the mandate. 28 U.S.C. § 2412(f). If the Court waits, none accrues at all. A stay would shift the cost of waiting from the Government to Sepulveda Ayala. Dkt. No. 32 at 2. The Government answers that his attorneys are not parties, so their losses do not count. Dkt. No. 31 at 3 n.2. True, but an EAJA award is payable to the prevailing litigant, not his lawyer. *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010). So this loss is Sepulveda Ayala's own. And under Ninth Circuit precedent and the plain language of EAJA, he is entitled to fees. Indeed, "[t]he Ninth Circuit has rejected the government's argument that EAJA fees were not available in

an immigration exclusion habeas proceeding, *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985), and has awarded EAJA fees to a petitioner successfully challenging immigration detention, *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009).” *Nguyen v. Bondi*, C26-460-MLP, Dkt. No. 23, at 3 (W.D. Wash. Aug. 26, 2026).

3.3. The Government attempts to distinguish *Hill*, arguing that the petitioner in *Hill* was not in custody and filed a petition to challenge the denial of an application to enter the United States. Dkt. No. 31 at 4. Thus, while it was a habeas petition, it did not challenge custody, like Sepulveda Ayala’s habeas petition did. *Id*. The Government argues that the Ninth Circuit’s holding in *Hill* should be limited to the facts of that case. But the Government’s argument fails to address *Nadarajah v. Holder*, in which EAJA fees were awarded to an immigration detainee when he succeeded on his habeas petition and was released from custody. 569 F.3d at 909–10, 926.

3.4. Because a stay will work damage to Sepuveda Ayala, the Government must prove “a clear case of hardship or inequity in being required to go forward.” *CMAX, Inc.*, 300 F.2d at 268 (quoting *Landis*, 299 U.S. at 255). The Government has not met that burden. On harm, it says only that “if a stay is not granted, the Government *may be* damaged by paying out money from the public fisc without a legal basis to do so.” Dkt. No. 31 at 2 (emphasis added). But there is a legal basis to order fees. This is not a case in which the litigants are waiting for a higher court to answer a question of law that is unresolved in this Circuit. There is binding precedent on point. *Nadarajah v.*

*Holder*, 569 F.3d at 909–10, 926. While the Court understands the Government hopes that law will be overturned in the future, the Government has not shown a clear case of hardship or inequity.

3.5. The Court also finds that staying this case indefinitely at this final stage of litigation will not "promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc.*, 300 F.2d at 268. A stay would simply keep this case from being finally resolved and closed.

3.6. Both parties point to *Douangdala v. Bondi*, No. 2:26-cv-00963-DGE (W.D. Wash. Aug. 26, 2026), where another court in this district granted an EAJA award but stayed its enforcement pending *Montoya Palacios*. Dkt. Nos. 31 at 3–4; 32 at 4. The Court declines that middle course. Granting fees and then withholding them would keep this case open and require another round of filings after the Supreme Court rules. If the Government wants the award held while it appeals, it may ask the Ninth Circuit for a stay.

3.7. Accordingly, after considering the *Landis* factors, the Court finds that the Government has not shown that a stay should issue. Its request for a joint status report is DENIED as moot.

3.8. Turning to EAJA, the Court finds that Sepulveda Ayala is the prevailing party. 28 U.S.C. § 2412(d)(1)(A).

3.9. The Government's position in the underlying agency action giving rise to this civil case was not substantially justified.

a. ICE acknowledged that Sepulveda Ayala's deferred action stayed his removal, making any future stay order from ICE "redundant" and

"unnecessary." Dkt. No. 2-1 at 14–15. For that reason, ICE denied Sepulveda Ayala's stay application *as moot*. Then, ICE acted contrary to its decision (denial as moot) by continuing to detain him to remove him. Put another way, on paper, the Government acknowledged that it could not remove Sepulveda Ayala because it had granted him the benefit of deferred action and permission to work in the United States, but in actuality, it continued to detain him for the express purpose of removing him.

b. The agency implicitly acknowledged that Sepulveda Ayala's detention was not substantially justified when it reconsidered its decision on his stay application, changing its interpretation of "deferred action" to one that would permit his removal (and thus his detention). *See Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 913 (W.D. Wash. 2005) ("Th[e] [stay] denial explicitly acknowledged that deferred action operates as a stay of removal, but after litigation began, ICE conducted what it termed a 'secondary review' and changed its position entirely. This contradiction undermines the Government's current stance and appears more like a post-hoc rationalization than reasoned agency interpretation.").

c. The pattern continued after briefing closed. One day later, USCIS issued a notice of intent to revoke Sepulveda Ayala's deferred action and work authorization. Dkt. No. 23 at 4. As the Court observed then, the timing of that notice "reinforces concerns about the Government's shifting litigation positions." *Id*. at 10.

3.10. The Government does not defend that conduct. Its opposition argues only that two litigation positions were reasonable: the Section 1252(g) jurisdictional bar and its reading of deferred action. Dkt. No. 28 at 4–6. But once the underlying agency action is found not substantially justified, whether the litigation position was justified is not dispositive. *Andrew v. Bowen*, 837 F.2d 875, 880 (9th Cir. 1988). And while *Velasco Gomez* shows that reasonable minds could differ about Section 1252(g), the Government acknowledges, it never reached the meaning of deferred action. Dkt. No. 28 at 4, 5 n.2.

3.11. Because the Government's position was not substantially justified, the Court considers whether there are any special circumstances that would make an award of fees unjust. The Court finds none.

3.12. Accordingly, the Court awards fees under EAJA.

3.13. The Court further finds the Ninth Circuit's three-part test for EAJA fee enhancement is satisfied.

a. It is undisputed that Sepulveda Ayala's attorneys possess distinctive knowledge and specialized skill in immigration law, habeas, and constitutional law. This matter raised complex, overlapping issues in these areas of law, especially considering the Government's novel interpretation of "deferred action" as it applied to Sepulveda Ayala as a U Visa applicant. *See Nadarajah*, 569 F.3d at 914 (enhanced fees appropriate where the "case involved more than established principles of law with which the majority of attorneys are familiar."). The Government

has not contested this point. The Court thus finds that the first and second factors of the Ninth Circuit's three-part test for EAJA fee enhancement are satisfied.

b. The Government argues that Sepulveda Ayala has not satisfied the third factor, which considers whether attorneys with the relevant skills are available at the statutory rate. It points out that his counsel never filed supplemental declarations they promised. That is true, and the burden remains with Sepulveda Ayala, but the Government does not argue that the Court should decline to consider the declarations filed in *Rahman*, nor does it offer any reason to disregard them.

c. For the reasons stated above, in the Conclusions of Fact, the Court finds that there was not an attorney available to take this case for the EAJA rate of approximately $250 per hour.

d. This finding is consistent with *Rahman*, 2026 WL 323046.

3.14. While counsel has shown that enhanced fees are warranted, they have not shown the reasonableness of the hourly rates they propose.

a. Hourly rates are reasonable when they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Just as they did in *Rahman*, Counsel rely on the *Laffey* Matrix to support their

proposed hourly rates of $1,141 per hour and $948 per hour. Dkt. No. 25 at 11.

b. The Court declines to apply the *Laffey* Matrix proposed by fee petitioners for the same reasons stated in *Rahman*, 2026 WL 323046, at *5 (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

3.15. Based on Hunter's declaration in *Rahman,* and the court's EAJA fee determination in that case, the Court finds that a reasonable hourly rate for Vomacka and Boyd here is $650 per hour. This case raises legal issues as complex as those in *Rahman*—it requires competency in constitutional law, immigration law, immigration removal proceedings, and habeas corpus proceedings, as well as federal court litigation experience, which most immigration lawyers in Washington do not have. *See also Xiaosi Hu v. Mutina*, No. 2:19-cv-01302-RAJ, 2020 WL 2199473, at *2 (W.D. Wash. May 6, 2020) ("Given the prevailing market rates for specialized and highly experienced immigration attorneys specializing in complex litigation, the Court determines that an hourly rate of $650 is more appropriate."); *Ingram v. Oroudjia*n, 647 F.3d 925, 928 (9th Cir. 2011) (Courts may rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees.).

3.16. The Government does not challenge Vomacka's and Boyd's time log in this matter. The log shows 57.5 hours for Vomacka and 1.5 hours for Boyd, for a total of 59 hours. Dkt. No. 25-1. The Government's alternative calculation

assumes 69 hours billed, Dkt. No. 28 at 6 n.3, but the record does not support that figure.

3.17. Because the Court has granted enhanced EAJA fees, it does not consider fee petitioners' request for fees under the common law.

## 4. CONCLUSION

Accordingly, the motion for attorneys' fees is GRANTED IN PART. Dkt. No. 25. Sepulveda Ayala is AWARDED $38,350.00 in attorneys' fees—59 hours at $650 per hour—and $28.00 in expenses, for a total of $38,378. The Government's request for a stay is DENIED.

Dated this 21st day of September, 2026.

Jamal N. Whitehead
United States District Judge